**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **PATSY K. COPE, individually, and** | § | |
| **ALEX ISBELL, as dependent** | § | |
| **administrator of, and on behalf of, the** | § | |
| **ESTATE OF DERREK QUINTON** | § | |
| **GENE MONROE and his heirs-at-law** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:18-cv-00015-C** |
| | § | |
| **COLEMAN COUNTY, TEXAS;** | § | |
| **LESLIE W. COGDILL; MARY JO** | § | |
| **BRIXEY; and JESSIE W. LAWS** | § | |

**BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT BASED ON QUALIFIED IMMUNITY**

Respectfully submitted,

JACKSON WALKER L.L.P.
135 W. Twohig Ave., Suite C
San Angelo, Texas  76903
(325) 481-2560
(325) 481-2585 - Facsimile

By: /s/ Jon Mark Hogg
     Jon Mark Hogg
     jmhogg@jw.com
     State Bar No. 00784286
     Amanda N. Crouch
     acrouch@jw.com
     State Bar No. 24077401

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

FACTUAL BACKGROUND..................................................................................................1

ARGUMENT AND AUTHORITIES...................................................................................5

    A.    Standard of Review..................................................................................5

    B.    The Qualified Immunity Framework ...................................................6

        (1)    Part One - Plaintiffs Must Establish Defendants Violated a
                Constitutional Right With Deliberate Indifference.....................................7

        (2)    Part Two - Plaintiffs Must Establish Defendants' Conduct Was
                Objectively Unreasonable Based on Clearly Established Law...................8

    C.    Defendants Are Entitled to Qualified Immunity As to Plaintiffs' Claims..............9

        (1)    Plaintiffs Cannot Establish Defendants Acted With Deliberate
                Indifference. .............................................................................................9

        (2)    Defendants' Actions Did Not Violate Clearly Established Law and
                Were Objectively Reasonable................................................................12

CONCLUSION AND PRAYER ..................................................................................14

CERTIFICATE OF SERVICE ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Ford Bend Cty.*,
58 F.3d 173 (5th Cir. 1995) ...................................................................................6

*Brown v. Callahan*,
623 F.3d 249 (5th Cir. 2010) .................................................................................5

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) .................................................................................5

*Davis v. Scherer*,
468 U.S. 183 (1984)..............................................................................................13

*Domino v. Texas Dep't Criminal Justice*,
239 F.3d 752 (5th Cir. 2001) .................................................................................7

*Farmer v. Brennan*,
511 U.S. 825 (1994) (negligence cannot form the basis for a § 1983 claim)........11

*Flores v. City of Palacios*,
381 F.3d 391 (5th Cir. 2004) .................................................................................6

*Gobert v. Caldwell*,
463 F.3d 339 (5th Cir. 2006) .................................................................................8

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)............................................................................................6, 8

*Hunter v. Bryant*,
502 U.S. 224 (1991)................................................................................................8

*Hyatt v. Callahan County*,
No. 1:14-CV-169-C, 2015 U.S. Dist. LEXIS 192692 (N.D. Tex. June 18,
2015) ..............................................................................................................9, 10, 13

*Hyatt v. Thomas*,
843 F.3d 172 (5th Cir. 2016) ........................................................................6, 7, 9, 11

*Jacobs v. West Feliciana Sheriff's Dep't*,
228 F.3d 388 – 95 (5th Cir. 2000) .........................................................................9

*Johnston v. City of Westworth*,
No. 4:17-CV-279-A, 2017 U.S. Dist. LEXIS 104980 (N.D. Tex. July 7, 2017)..................8, 9

*King v. Handorf*,
821 F.3d 650 (5th Cir. 2016) .............................................................................6

*Lemoine v. New Horizons Ranch & Ctr., Inc.*,
174 F.3d 629 (5th Cir. 1999) ...........................................................................11

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) (en banc) .............................................................5

*Malley v. Briggs*,
475 U.S. 335 (1986)............................................................................................6

*Nunez v. Deviney*,
4:06-CV-0579-BE, 2007 U.S. Dist. LEXIS 51683 (N.D. Tex. July 17, 2007) ................11, 12

*Pierce v. Smith*,
117 F.3d 866 (5th Cir. 1997) .............................................................................8

*Shepard v. Hansford County*,
110 F. Supp. 3d 696 (N.D. Tex. 2015) .........................................................7, 12

*Thompson v. Upshu Cnty., Tex.*,
245 F.3d 447 (5th Cir. 2001) ...........................................................................12

*Williams v. Kaufman County*,
352 F.3d 994 (5th Cir. 2002) .............................................................................6

**Statutes**

42 U.S.C. § 1983...........................................................................................5, 6, 13

Defendant Laws .................................................................................................3, 13

Sunday, October 1, Defendant Laws ........................................................................3

**Other Authorities**

Fourteenth Amendment ...............................................................................6, 7, 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **PATSY K. COPE, individually, and** | § | |
| **ALEX ISBELL, as dependent** | § | |
| **administrator of, and on behalf of, the** | § | |
| **ESTATE OF DERREK QUINTON** | § | |
| **GENE MONROE and his heirs-at-law** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:18-cv-00015-C** |
| | § | |
| **COLEMAN COUNTY, TEXAS;** | § | |
| **LESLIE W. COGDILL; MARY JO** | § | |
| **BRIXEY; and JESSIE W. LAWS** | § | |

## BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

TO THE HONORABLE SAM CUMMINGS:

LESLIE W. COGDILL, MARY JO BRIXEY and JESSIE W. LAWS, Defendants in their individual capacities only ("Defendants"), request the Court grant summary judgment and dismiss this case against them on the basis of qualified immunity. Plaintiffs cannot establish that Defendants acted with deliberate indifference, which is required to prove a constitutional violation under the qualified immunity framework. Additionally, Defendants' actions were not unreasonable or in violation of clearly established law.

### FACTUAL BACKGROUND

1.      The facts of this case are not disputed. Derrek Monroe, a pretrial detainee inmate in the Coleman County jail, died by self-strangulation using a telephone cord in the cell in which he was being held on the morning of October 1, 2017. Monroe was arrested on September 29, 2017 by DPS in Coleman County, Texas and was transported to the Coleman County Jail for booking and incarceration. (Appx. 59, 60), (Appx. 76 – Laws Depo, 8:1 – 4).

2.     The County Jail is a two story building, has four cells and has a maximum capacity of 15 beds.  (Appx. 17, 26 – Cogdill Depo pp. 65, 101–102). Under the Texas Commission on Jail Standards requirements, one jailer must be provided on each floor of the facility where 10 or more inmates are housed with no less than 1 jailer per 48 inmates.  *See* 37 TAC § 275.4 (Appx. 138).  In compliance with these standards, the jail runs two jailers on duty during the week days and one jailer at night and on weekends.  (Appx. 12-13 – Cogdill Depo, 46:14 – 49:5).

3.     During jail intake, Monroe completed a "Screening Form for Suicide and Medical/Mental/Developmental Impairments."  (Appx. 64 – Cogdill Ex., p. 136).  Based on information provided by Monroe in the form regarding his mental health, the intake officer at the jail immediately prepared a report for the magistrate in accordance with jail policies.  (Appx. 61 – Cogdill Ex., p. 130).  The intake officer also contacted Mental Health and Mental Retardation Services ("MHMR") and requested someone be sent to the jail for further evaluation of Monroe. (Appx. 64 – Cogdill Ex., p. 136).  Mary Jo Brixey, the jail administrator, was also notified that Monroe had answered questions indicating he was at risk for suicide and made sure the jailer doing the intake filled out all the paperwork, notified the magistrate and contacted MHMR in accordance with the jail policies.  (Appx. 116-117 – Brixey Depo, 32:10 -  33:11).  Monroe was placed on suicide watch where jail officials, including Laws, observed Monroe every thirty minutes and kept a record of their observations.  (Appx. 62-63, 65-66 – Cogdill Ex., p. 131 – 32, 137-138).  The suicide watch procedure was in compliance with requirements promulgated by the Texas Commission on Jail Standards as well as Coleman County's jail policies.  *See* 37 TAC § 275.1 (Appx. 137), (Appx. 56-58 – Cogdill Ex., p. 43 – 45).

4.      At approximately 3:15 pm on September 29, 2017, MHMR personnel arrived to evaluate Monroe.  (Appx. 42 – Cogdill Depo, p. 167:1 – 16).  Before the evaluation could occur, Monroe apparently had a seizure and was taken to the Coleman County Medical Center.  Monroe was discharged from the medical center the following day, September 30, 2017, and arrived at the jail that afternoon.  (Appx. 44 – Cogdill Depo, p. 174:7 - 25).  Shortly after his return to the jail, Monroe loosely wrapped a sheet around his neck and attempted to use the sheet to strangle himself.  (Appx. 16 – Cogdill Depo, 62:9 – 63:18), (Appx. 67, 72 – Cogdill Ex., p. 147, 172).  Laws and Cogdill immediately removed him from the general population cell, took his clothes and everything Defendants thought he could use to harm himself with and placed him in the single occupancy cell in a safety smock designed to prevent suicide.  (Appx. 16 – Cogdill Depo, 62:9 – 63:10), (Appx. 71 – Cogdill Ex., p. 168).  Afterwards, he laid on his bunk and went to sleep.  (Appx. 72 – Cogdill Ex., p. 172).  At approximately 4:25 pm that afternoon, Monroe was evaluated by MHMR.  (Appx. 70 – Cogdill Ex., p. 166).   MHMR recommended that Monroe be placed on highest suicide watch, which means he was observed every fifteen minutes.  (Appx. 70 – Cogdill Ex., p. 166).   Monroe was observed every fifteen minutes overnight and was either asleep or laying on the floor during most of the observation periods.  (Appx. 62-63 – Cogdill Ex., p. 131 – 32).

5.      The following morning, Sunday, October 1, Defendant Laws arrived at the jail for his next shift.  Shortly after his arrival, at approximately 8:30 am, Monroe asked Defendant Laws if he could take a shower because he had soiled himself.  (Appx. 67-69 – Cogdill Ex., p. 147-148, 160).  Laws called Brixey and asked if it was okay if he let Monroe out to take a shower.  *See id*. Brixey asked Laws how Monroe was behaving.  *See id*. Laws reported that he was fine

but he just wanted to take a shower and that Monroe had promised to behave.  *See id*. Brixey gave permission and Monroe took Laws to the shower.  *See id*.

6.      After he finished showering and was returned to his cell, Monroe asked for his clothes back.  (Appx. 67 – Cogdill Ex., p. 147); (Appx. Tab 4 - Video, 8:35:16).  Laws told him he could not have his clothes back but gave him a clean smock.   (Appx. 67 – Cogdill Ex., p. 147).  Monroe became agitated and demanded he get his clothes back.  *See id*.; *see also* (Appx. Tab 4 - Video, 8:36:05).  Monroe became more irate and began yelling saying that if he didn't get his clothes back, he would do something "stupid."  *See id*.; *see also* (Appx. Tab 4 - Video, 8:36:34).  Laws continued to try to talk to him and calm him down.  *See id*.  Shortly thereafter, Monroe flooded the cell with the water supply from the toilet.  *See id*.  Laws turned off the water and began mopping up.  *See id*.; *see also* (Appx. Tab 4 - Video, 8:36:43).  Monroe then took the plunger that was in the cell with him and began beating on the bars and walls while yelling.  *See id*.  He also took the phone receiver and began beating on the phone and wall with it.  *See id*.  He then wrapped the metal phone cord around his neck.  (Appx. 67 – Cogdill Ex., p. 147).

7.      Laws immediately called the Deputy on duty to come to the jail for backup.  *See id*.  Laws did not enter the cell without backup because of his training and because it was jail policy. (Appx. 104 – Laws Depo, 118:17 – 119:13); (Appx. 56-58 – Cogdill Ex. 1, 43 – 45).  He also did not feel that it would be safe for him to enter the cell without backup based on Monroe's increasingly violent and angry behavior.  *See id*.; *see also* (Appx. 104-105 – Laws Depo, 119:14 – 122:3).  Seconds before, Monroe was yelling and cursing at Laws and swinging the plunger full force to slam it against the cell as if it was a baton or a bat.  *See id*.  Laws called Brixey who said she would be right there, and then he called Sheriff Cogdill.  (Appx. 67, 69 – Cogdill Ex., p. 147, 160).  Brixey arrived approximately 10 minutes later.  (Appx. 69 – Cogdill Ex., p. 160).

Laws and Brixey entered the cell together and unwrapped the cord from around Monroe's neck. (Appx. 67, 69 – Cogdill Ex., p. 147, 160).  Laws found a pulse but Monroe was not breathing. (Appx. 67, 69 – Cogdill Ex., p. 147, 160).  Laws asked Brixey to get the breathing resuscitator. (Appx. 67 – Cogdill Ex., p. 147).  She did so and also called 911 to dispatch EMS.  (Appx. 68 – Cogdill Ex., p. 148).   The EMTs arrived shortly, at approximately 8:54 am, and took over applying emergency aid.  (Appx. 67-69 – Cogdill Ex., p. 147-148, 160).  Monroe was transported to the hospital at approximately 11:03 am.  (Appx. 69 – Cogdill Ex., p. 160).  Monroe ultimately died.  (Appx. 77 – Laws Depo, 11:16 – 24).

8.      In July 2015, the Texas Commission on Jail Standards issued a technical assistance memorandum recommending that the length of telephone cords located inside of cells be no more than twelve inches in length.   However, both the memorandum and a follow up memorandum explicitly state that it is a recommendation and not a mandate for county jails. (Appx. 73 – Cogdill Ex., p. 176).  Coleman County did not know about the memorandum until it was sent to Cogdill by the Texas Commission on Jail Standards on October 12, 2017, approximately 12 days after Monroe's death.  (Appx. 49 – Cogdill Depo, 193:11 – 194:17).

## ARGUMENT AND AUTHORITIES

### A.      Standard of Review

9.      Typically, the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, "[a] qualified immunity defense to § 1983 liability alters the usual summary judgment burden of proof; once an official pleads the defense of qualified immunity in a § 1983 action, the burden then shifts to the plaintiff." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); see also *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) ("Although

nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). Thus, Defendants' assertion of qualified immunity shifts the burden to Plaintiffs to negate the availability of the defense. *See King v. Handorf*, 821 F.3d 650 (5th Cir. 2016); *see also Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

## B.    The Qualified Immunity Framework

10.    Plaintiffs have asserted causes of action against Defendants under 42 U.S.C. § 1983 for alleged violations of Monroe's Fourteenth Amendment due process rights to reasonable medical care, to be protected and not to be punished as a pretrial detainee. *See* Plaintiffs' Original Complaint, Dkt. 1, ¶ 97.   The doctrine of qualified immunity shields Defendants from liability as long as they did not act with deliberate indifference and their conduct did not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).   In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   Qualified immunity represents the norm and should be denied only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173 (5th Cir. 1995).

11.    In evaluating a claim of qualified immunity, the Court must apply a two part test. First, the Court must determine if Plaintiffs' allegations, if true, establish a constitutional violation that occurred as a result of Defendants' deliberate indifference.   *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004). Second, if a constitutional violation has allegedly occurred, the Court must then determine whether Defendants' actions violated "clearly established constitutional rights of which a reasonable person would have known." *Williams v. Kaufman County*, 352 F.3d 994, 1003 (5th Cir. 2002).

**(1)     Part One - Plaintiffs Must Establish Defendants Violated a
Constitutional Right With Deliberate Indifference.**

12.     As a pretrial detainee, Monroe had a constitutional right under the Fourteenth
Amendment to adequate medical care and protection from harm during the length of his
confinement.  *Shepard v. Hansford County*, 110 F. Supp. 3d 696, 708 (N.D. Tex. 2015) (citing
*Thompson v. Upshu Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).  Episodic acts or omissions
of Defendants violate Monroe's constitutional rights under the Fourteenth Amendment ***only if***
Defendants acted with deliberate indifference.  *See id*. (citing *Hare v. City of Corinth, Miss.*, 74
F.3d 633. 639 (5th Cir. 1996)) (emphasis added).

13.     To establish deliberate indifference, Plaintiffs must prove: (1) Defendants had
subjective knowledge of a substantial and serious risk that Monroe might commit suicide; and
(2) Defendants nevertheless disregarded the risk of suicide by responding to it with deliberate
indifference.  *See id*.  Plaintiffs' evidence must prove that Defendants were aware of facts that a
substantial risk of serious harm exists, and yet still intentionally disregarded the risk of suicide.
*See id*.  Because suicide is difficult to predict, an official's failure to alleviate a significant risk
that he should have perceived but did not does not rise to the level of deliberate indifference.  *See
id*. (citing *Nunez v. Deviney*, 4:06-CV-0579-BE, 2007 U.S. Dist. LEXIS 51683, at *3 (N.D. Tex.
July 17, 2007)); *see also Domino v. Texas Dep't Criminal Justice*, 239 F.3d 752, 756 (5th Cir.
2001).  Thus, Plaintiffs must establish more than mere negligence or lack of oversight on the part
of Defendants.  *See Shepard*, 110 F. Supp. 3d at 710.

14.     Deliberate indifference is an extremely high standard to meet.  *See Domino*, 239
F.3d at 756.  Prison officials who actually knew of a substantial risk to inmate health or safety
may be found free from liability if they responded reasonably to the risk even if the harm
ultimately was not averted.  *See Hyatt*, 843 F.3d at 178.  To rise to that standard, Plaintiffs must

prove Defendants refused to treat Monroe, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

> **(2)   Part Two - Plaintiffs Must Establish Defendants' Conduct Was Objectively Unreasonable Based on Clearly Established Law.**

15.    Under this second prong, Defendants are entitled to qualified immunity if they acted with "objective reasonableness" as evaluated against the "clearly established law." *Harlow*, 457 U.S. at 818.  Qualified immunity insulates an official from liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Johnston v. City of Westworth*, No. 4:17-CV-279-A, 2017 U.S. Dist. LEXIS 104980, at *5 (N.D. Tex. July 7, 2017) (citing *Harlow*, 457 U.S. at 818). For a right to be "clearly established," it must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *See id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Thus, pre-existing law must dictate, not just suggest or allow or raise a question about, the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.  *See Pierce v. Smith*, 117 F.3d 866 (5th Cir. 1997).  If not, an official could not reasonably be said to "know" that his conduct is a violation of clearly established law.  *See Harlow*, 457 U.S. at 818.

16.    Whether an action or omission violates "clearly established" law should not be decided based upon the "20/20 vision of hindsight" but rather should give deference to the judgment of reasonable officers on the scene.  *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not.  *See Johnston*, 2017 U.S. Dist. LEXIS at *6.  If public officials of reasonable competence could differ on the lawfulness of

defendant's actions, the defendant is entitled to qualified immunity.  *See id*. (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992)).

17.    While the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, the Fifth Circuit has specifically stated that the law is not established with any clarity as to what those measures must be.  *See Hyatt*, 843 F.3d at 178 (citing *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328-29 (5th Cir. 1998)); *see also Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 – 95 (5th Cir. 2000).  What is clear is that, even if an officer responds without the due care a reasonable person would use – such that the officer is only negligent – there will be no liability.  *See id*. (citing *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).  When the parties do not dispute the material facts of what occurred, as is the case here, the question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court.  *See Hyatt v. Callahan County*, No. 1:14-CV-169-C, 2015 U.S. Dist. LEXIS 192692, at *9 (N.D. Tex. June 18, 2015) (citing *Harper v. Harris County, Texas*, 21 F.3d 597, 600 (5th Cir. 1994)).

### C.    Defendants Are Entitled to Qualified Immunity As to Plaintiffs' Claims.

18.    Defendants are entitled to qualified immunity because: (1) Plaintiffs cannot establish that Defendants acted with deliberate indifference in violating Monroe's constitutional rights; and (2) Plaintiffs cannot prove a violation of "clearly established law" by Defendants or that Defendants' actions were objectively unreasonable.

### (1)    Plaintiffs Cannot Establish Defendants Acted With Deliberate Indifference.

19.    The summary judgment evidence establishes that Defendants took active steps to prevent Monroe's suicide.  Defendants put Monroe on a thirty-minute and then fifteen-minute suicide watch in accordance with jail policies and based upon the recommendation from MHMR.

*See id*; *see also* Cogdill Ex. 1, p. 131 – 32, 137 – 38, 166 (Appx. 62-63, 65-66, 70).  Defendant Laws' desk was outside of Monroe's cell and Laws essentially observed Monroe constantly from his desk in addition to the thirty-minute and fifteen-minute observations that Laws logged as part of Monroe's suicide watch. (Appx. 90 – Laws Depo, pp. 63 – 64).  Defendants removed all of Monroe's clothing and potential ligatures from his cell that they thought could result in self-inflicted harm and provided him with a safety smock.  (Appx. 172).  Thus, the evidence clearly establishes that Defendants took measures to protect Monroe from the risk of suicide.

      20.     Plaintiffs will likely contend that Defendants' failure to remove the telephone or shorten the telephone cord in Monroe's cell constitutes deliberate indifference.   Under the qualified immunity standard, Plaintiffs have the burden to establish that Defendants had actual subjective knowledge of Monroe's suicide risk with the phone cord at the time of the incident and, despite such knowledge, failed to act in a manner to alleviate the risk.  There is no evidence that Defendants thought Monroe could have committed suicide by using the phone cord.  Monroe had a right to have reasonable access to a telephone while in his prison cell.  (Appx. 54-55 – Cogdill Depo. Ex. 1, 22 – 23).  Defendant Cogdill explicitly testified that he "never even thought about" the possibility that the phone cord was too long for safety reasons.  (Appx. 22 – Cogdill Depo, 85:11 – 16).  No one had ever mentioned anything to him about the length of the phone cord being too long or the length of phone cords in other cells.  (Appx. 22 – 85:17 – 22).  Additionally, there is no evidence that Defendants knew about the Technical Assistance Memorandum regarding phone cord length at the time of the incident.  To the contrary, Cogdill testified that he neither received a copy of the memorandum nor otherwise know about it until October 12, 2017, twelve days after Monroe's suicide.  Additionally, there is no evidence in the record of any prior inmate or detainee using a phone cord as a potential ligature that would have

put Defendants on notice that someone could use the phone cord in such a manner.  Defendants cannot have ignored the memorandum with deliberate indifference because they were not aware that it existed.

21.    At most, Defendants' failure to remove the phone cord from Monroe's cell might be considered negligence.  But negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody.  *See Hyatt*, 843 F.3d at 179 (citing *Estate of Pollard v. Hood Cty., Tex.*, 579 F. App'x 260, 265 (5th Cir. 2014)); *see also Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 635 (5th Cir. 1999) (noting "oversight" in administration at juvenile facility where detainee died of heatstroke was insufficient to show anything more than negligence, mandating application of qualified immunity); *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (negligence cannot form the basis for a § 1983 claim).

22.    For example, in *Nunez*, the prison officials removed personal items from Nunez's pockets before he was placed in the cell but did not remove his shoes or shoelaces.  *See Nunez v. Deviney*, 4:06-CV-0579-BE, 2007 U.S. Dist. LEXIS 51683, at *2 (N.D. Tex. July 17, 2007).  No one monitored or checked on Nunez until shortly before 6:00 am the next day when prison officials found that he had strangled himself with his shoelaces.  His family sued contending that the prison officials' failure to adequately protect him from suicide was actionable as a violation of the Fourteenth Amendment.  *See id*. at *5.  The Court found the Plaintiffs failed to establish the deliberate indifference required to negate qualified immunity as to the individual prison officials.  *See id*.  Specifically, the Court noted that although "hindsight might show that the officer's choices were ill-advised, even grossly negligent, the evidence fails to create a genuine issue of material fact on the issue of [the prison officials] subjective deliberate indifference to a substantial risk of harm befalling Nunez."  *See id*. at *10.

23.     To be considered deliberately indifferent to a known suicide risk, an officer's acts must constitute at least more than a mere "oversight."  *See id*. Although the measures taken by Defendants' to reduce the risk of suicide were "ultimately, and tragically, insufficient," they do not constitute deliberate indifference as a matter of law.

### (2)    Defendants' Actions Did Not Violate Clearly Established Law and Were Objectively Reasonable.

24.     Even if Plaintiffs can establish that Defendants acted with deliberate indifference, their actions did not violate clearly established law. Plaintiffs contend that Defendants had an unfettered constitutional obligation to prevent Monroe's suicide even at the risk of prison officials' own safety and assert it was a violation of clearly established law for Defendants to not enter the cell without backup.  The Fifth Circuit has never held that a jailer has an obligation to risk his life or go into a cell without any backup in an effort to stop an inmate from committing suicide.  The only specific measures that are clearly established pertain to circumstances not at issue in this case, such as a jailer placing a suicidal detainee in a cell with tie-off points and blankets and an intentional failure to maintain regular suicide checks.  *See Shepard*, 110 F. Supp. 3d at 712.  Defendants complied with these protective measures.  Thus, because Defendants' actions did not violate any clearly established law, this Court should find that Defendants are entitled to qualified immunity.  *See Thompson*, 245 F.3d at 461 – 62.

25.     Plaintiffs attempt to rely upon provisions of the Texas Commission on Jail Standards to prove a violation of clearly established law. Specifically, Plaintiffs assert that Defendants' failure to comply with recommendations from the technical assistance memorandum regarding the length of telephone cords in jail cells serves as evidence of a violation. Even assuming that Defendants had knowledge of the memorandum prior to Monroe's death and assuming that the memorandum contained a mandate and not recommendations, a violation of

the memorandum cannot be relied upon to show a "clear violation" of constitutional rights. "Officials, sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the . . . rights that give rise to the cause of action for damages [under § 1983]." *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984).  Violation of statutory standards of conduct alone is not sufficient to establish that a defendant's actions transgressed "clearly established" constitutional rights. *Id.* at 194.  Thus, Plaintiffs cannot rely upon the technical assistance memorandum to prove a violation of clearly established law.

26.     Further, Defendants' actions were objectively reasonable.  Monroe was put on a thirty-minute suicide watch and then a fifteen-minute suicide watch during the time he was at the jail.  Additionally, Defendants removed Monroe's clothing and the sheets from his cell in and provided him with a smock that was approved for distribution to individuals on suicide watch. Monroe was placed in a cell that permitted video surveillance monitoring of his person and behavior and was located next to Laws' desk.  Thus, there is no legitimate dispute that Defendant Laws took some steps in regard to Monroe's safety and medical needs.  *See Hyatt*, 2015 U.S. Dist. LEXIS 192692, at *13 (relying on the conclusion that Defendants took some steps that should have been taken as evidence of reasonableness).  Additionally, Defendants acted in accordance with the Coleman County jail policies.  Simply put, Plaintiffs have failed to direct the court to specific authority to conclude Defendants' actions were in violation of a clearly established law or specific facts to show that Defendants acted unreasonably.  Thus, Plaintiffs' argument that Defendants' steps were inadequate or ineffectual in preventing Monroe's suicide cannot prove a violation of clearly established law.  *See id.* (citing *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 554 (5th Cir. 1997)).

---

## CONCLUSION AND PRAYER

27.    In short, Plaintiffs cannot establish that Defendants acted with deliberate indifference with respect to Monroe's constitutional rights.  Additionally, Plaintiffs cannot prove that Defendants' actions in caring for Monroe and attempting to prevent his tragic suicide were in violation of any clearly established law. Therefore, Defendants are entitled to qualified immunity and Plaintiffs' claims against Defendants should be dismissed.

ACCORDINGLY, Leslie W. Cogdill, Mary Jo Brixey and Jessie W. Laws, Defendants request that the Court grant this Motion and dismiss all of Plaintiff's claims against Defendants with prejudice and for any other relief to which they are entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.
135 W. Twohig Ave., Suite C
San Angelo, Texas  76903
(325) 481-2560
(325) 481-2585 - Facsimile

By: /s/ Jon Mark Hogg
      Jon Mark Hogg
      jmhogg@jw.com
      State Bar No. 00784286
      Amanda N. Crouch
      acrouch@jw.com
      State Bar No. 24077401

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record on file.

/s/ Jon Mark Hogg
Jon Mark Hogg