UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| PATSY K. COPE, individually, and ALEX ISBELL, as dependent administrator of, and on behalf of, the ESTATE OF DERREK QUINTON GENE MONROE and his heirs-at-law, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 6:18-cv-0015-H |
| v. | § § | |
| COLEMAN COUNTY, TEXAS; and LESLIE W. COGDILL; MARY JO BRIXEY; and JESSIE W. LAWS, | § § § § | |
| Defendants. | § § | |

PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF DEFENSE EXPERT JOHN T. VANCE

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.    BACKGROUND ......................................................................................................... 1

II.    ARGUMENTS AND AUTHORITIES ........................................................................ 2

    A. Vance is not qualified to opine on County policies and practices and jail conditions....... 5

    B. Vance's opinions are not reliable or relevant.................................................... 9

       1. Not Based on Sufficient Facts or Data........................................................ 10

       2. Improper Conclusions................................................................................... 13

III.    CONCLUSION........................................................................................................... 20

CERTIFICATE OF CONFERENCE......................................................................................... 22

CERTIFICATE OF SERVICE ................................................................................................. 22

TABLE OF AUTHORITIES

**Cases**

*In re Air Crash Disasters at New Orleans, La.*,
    795 F.2d 1230 (5th Cir. 1986) ................................................................... 9, 14

*Askanase v. Fatjo*,
    130 F.3d 657 (5th Cir. 1997) ................................................................... 10, 14

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ................................................................................. 16

*Claar v. Burlington N. RR*,
    29 F.3d 499 (9th Cir. 1994) ......................................................................... 4

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003) ..................................................................... 4

*Cope v. Coleman Cnty.*,
    No. 23-10414, 2024 WL 3177781 (5th Cir. June 26, 2024) ................................... 1

*Curtis v. M&S Petroleum, Inc.*,
    174 F.3d 661 (5th Cir. 1999) ....................................................................... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................. 2, 3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ....................................................................... 6

*Double Diamond Delaware Inc. v. Homeland Ins. Co. of New York*,
    475 F. Supp. 3d 576 (N.D. Tex. 2020) ........................................................... 3

*Ferguson v. GB Tools & Supplies, Inc.*,
    No. 1:08-CV-079-C, 2009 WL 10703177 (N.D. Tex. July 31, 2009) (Cummings, S.J.) ........... 5

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ............................................................................... 4, 9

*Goodman v. Harris Cnty.*,
    571 F.3d 388 (5th Cir. 2009) ......................................................... 10, 13, 14, 16

*Graham v. Dallas Area Rapid Transit*,
    288 F. Supp. 3d 711 (N.D. Tex. 2017) ........................................................... 10

*Harris v. FedEx Corp. Servs., Inc.*,
    92 F.4th 286 (5th Cir. 2024) ...................................................................... 2, 4

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ....................................................................... 6

*Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*,
    304 F. Supp. 3d 525 (N.D. Tex. 2018) ............................................................. 9

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ............................................................................... 3, 5

iii

*Little v. Tech. Specialty Prods., LLC*,
  940 F. Supp. 2d 460 (E.D. Tex. 2013) ................................................. 10

*McNabney v. Lab. Corp. of Am.*,
  153 Fed. App'x 293 (5th Cir. 2005) .................................................... 4

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) ............................................................. 6

*Owen v. Kerr–McGee Corp.*,
  698 F.2d 236 (5th Cir. 1983) ............................................................. 10

*Pipitone v. Biomatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002) ............................................................. 5

*Rosado v. Deters*,
  5 F.3d 119 (5th Cir. 1993) ................................................................. 7

*Roton v. Peveto Fin. Group, LLC*,
  649 F. Supp. 3d 300 (N.D. Tex. 2022) ................................................ 2

*Seaman v. Seacor Marine L.L.C.*,
  326 Fed. App'x 721 (5th Cir. 2009) (per curiam) ............................... 6

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
  200 F.3d 358 (5th Cir. 2000) ............................................................. 5

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
  854 F.3d 765 (5th Cir. 2017) ............................................................. 3

*Sheehan v. Daily Racing Form, Inc.*,
  104 F.3d 940 (7th Cir. 1997) ............................................................. 4

*St. Martin v. Mobil Expl. & Producing U.S., Inc.*,
  224 F.3d 402 (5th Cir. 2000) ............................................................. 5

*Tapatio Springs Builders, Inc. v. Maryland Cas. Ins. Co.*,
  82 F. Supp. 2d 633 (W.D. Tex. Nov. 16, 1999) ............................... 2, 3

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*,
  No. EP-07-CV-247-PRM, 2010 WL 11451504 (W.D. Tex. Mar. 26, 2010) ..................... 6, 7

*United States ex rel. Ruscher v. Omnicare, Inc.*,
  No. 4:08-CV-3396, 2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) .................... 10, 11

*United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*,
  No. 3:19-CV-02486-N, 2024 WL 4508961 (N.D. Tex. Oct. 15, 2024) ................. 10

*United States v. Ibarra*,
  493 F.3d 526 (5th Cir. 2007) ............................................................. 11

*United States v. Kuhrt*,
  788 F.3d 403 (5th Cir. 2015) ............................................................. 3

*United States v. Tucker*,
  345 F.3d 320 (5th Cir. 2003) ............................................................. 3

iv

*Utils. Optimization Grp., L.L.C. v. Temple-Inland, Inc.*,
    No. 1:08-CV-68-TH, 2010 WL 11530726 (E.D. Tex. Jan. 13, 2010) ...................................... 6

*Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*,
    516 F. Supp. 2d 802 (S.D. Tex. 2007) ............................................................................... 4

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999) ............................................................................................ 6

**Rules**

Fed. R. Evid. 401 ................................................................................................................ 9

Fed. R. Evid. 402 .............................................................................................................. 10

Fed. R. Evid. 403 .............................................................................................................. 10

Fed. R. Evid. 702 ........................................................................................................ passim

Fed. R. Evid. 704 .............................................................................................................. 10

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs file this Motion to Exclude Expert Testimony of Defendant's Expert John T. Vance. In support, Plaintiffs show the Court as follows:

## I.    BACKGROUND

Derrek Quinton Gene Monroe strangled himself with a phone cord in his cell in Coleman County jail while Jailer Jessie Laws stood by and watched. (Doc. 67 at 19-21 ¶¶ 43-52) Even after Derrek lost consciousness, Laws did not enter the cell and help. (*Id.*) Derrek needlessly died because of a written Coleman County policy that prohibited jailers from entering a cell alone, *even for* a medical emergency involving an unconscious detainee who needed lifesaving CPR, combined with a County policy of not staffing more than one jailer when a suicidal detainee is in custody. (*Id.* at ¶¶ 56, 86-91, 96) Plaintiffs filed their Original Complaint on April 13, 2018, (Doc. 1), and their First Amended Complaint on November 16, 2022, (Doc. 67), in which they brought constitutional claims against Coleman County, Texas and others. Senior United States District Judge Sam R. Cummings granted summary judgment in favor of the County on February 23, 2023. (Doc. 103) The Fifth Circuit reversed the grant of summary judgment in part on June 26, 2024, as to Plaintiffs' conditions-of-confinement claim and remanded the case for proceedings consistent with the panel's opinion. *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *1 (5th Cir. June 26, 2024).

The case was then reassigned to this Court on or about January 15, 2025. The Court granted the County's request for additional discovery, expert designations, and summary-judgment briefing. (Doc. 136) Under the Court's Scheduling Order, expert designations and reports were due May 19, 2025. (Doc. 23) The County designated John T. Vance as a purported expert as to County practices and policies and conditions of confinement in the County jail and provided an

expert report to Plaintiffs on May 19, 2025, which was also filed in this case.[1] (Doc. 141) Vance's experience is almost exclusively limited to law enforcement duties, investigations, and security in the field. According to his Curriculum Vitae, Vance only worked as a jailer from 1990 through 1992. Accordingly, he is not qualified to opine on County practices and policies or jail conditions. But even if he were so qualified, many of his opinions do not meet the requirements of the Federal Rules of Evidence. Vance's expert report is rife with speculation, opinions that lack foundation, and legal conclusions. As such, his opinions should be excluded.

## II.    ARGUMENTS AND AUTHORITIES

The purpose of expert testimony is ultimately to help the trier of fact determine a fact in issue, not to tell the trier of fact how to determine an issue. Trial courts are to "function as gatekeepers" and should "ensure that only reliable and relevant expert testimony is presented to the jury." *Tapatio Springs Builders, Inc. v. Maryland Cas. Ins. Co.*, 82 F. Supp. 2d 633, 648 (W.D. Tex. Nov. 16, 1999) (citing *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579 (1993)); *Roton v. Peveto Fin. Group, LLC*, 649 F. Supp. 3d 300, 309-10 (N.D. Tex. 2022); *cf. Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) ("By allowing [the expert] to testify without a proper foundation, the district court abdicated its role as gatekeeper.").

Pursuant to the Federal Rules of Evidence:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert's opinion reflects a reliable application of the principles and

---

[1] The County did not serve any additional discovery or take any additional depositions.

methods to the facts of the case.

Fed. R. Evid. 702.

In its role as gatekeeper, a trial court must undertake a two-part analysis. "First, the court must determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is valid. Second, the court must determine whether that reasoning or methodology was applied properly to the facts in issue." *Tapatio Springs Builders*, 82 F. Supp. 2d at 648 (citing *Daubert*, 509 U.S. at 592-93, and *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)); *see also Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 775 (5th Cir. 2017). Although *Daubert* addressed traditional "scientific" evidence, "courts should consider the reliability of all experts, including those relying [on] experience-based knowledge." *Tapatio Springs Builders*, 82 F. Supp. 2d at 648-49; *see also United States v. Kuhrt*, 788 F.3d 403, 419 (5th Cir. 2015) ("The *Daubert* standard applies 'to all species of expert testimony, whether based on scientific, technical, or other specialized knowledge.'") (quoting *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003)). The Court's gatekeeping role "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

A party offering expert testimony has the burden of demonstrating that the expert is qualified, the testimony is reliable, and the testimony is relevant to an issue in the case. *Daubert,* 509 U.S. at 590-91; *see also Double Diamond Delaware Inc. v. Homeland Ins. Co. of New York*, 475 F. Supp. 3d 576, 577 (N.D. Tex. 2020). An expert must be qualified by knowledge, skill, experience, training, or education concerning the particular field in which his opinions are represented as those of an expert. Fed. R. Evid. 702. "Knowledge connotes more than subjective

3

belief or unsupported speculation." *See Daubert,* 509 U.S. at 589-90. The party proffering the testimony must also show that the expert's opinion will help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). And "an expert's testimony must be 'based on sufficient facts or data.'" *Harris*, 92 F.4th at 303 (quoting Fed. R. Evid. 702(b)).

The *Daubert* inquiry is fact-specific, and there are a variety of nonexclusive factors to consider in determining the reliability of an expert's testimony, including whether the theory or technique underlying the testimony (1) has been or can be tested, (2) has a known or potential rate of error, (3) has been subjected to peer review and publication, (4) is generally accepted within the relevant scientific community, and (5) has standards controlling a technique's operation. *See Daubert,* 509 U.S. at 593-94. Courts also consider factors such as the following:

- Whether the opinion was developed expressly for the purpose of testifying or as a result of independent research. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003); *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, 516 F. Supp. 2d 802, 815 (S.D. Tex. 2007).

- Whether the expert unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

- Whether the expert adequately accounted for alternative explanations. *See Claar v. Burlington N. RR*, 29 F.3d 499, 502 (9th Cir. 1994); *see also McNabney v. Lab. Corp. of Am.*, 153 Fed. App'x 293, 295 (5th Cir. 2005).

- Whether the expert was as careful as he would be in his regular professional work. *Sheehan v. Daily Racing Form*, *Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); *Whitney Nat'l Bank*, 516 F. Supp. 2d at 816.

- Whether the field of expertise claimed by the expert is known to reach reliable results for this type of opinion. *See Kumho Tire*, 526 U.S. at 151.

Although many of these factors may appear best suited for the analysis of scientific testimony, the court's "gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir. 2002). The *Daubert* factors are not "a definitive checklist or test." 509 U.S. at 593. Rather, the *Daubert* framework is "a flexible one." *Id.* at 594. The 2000 amendments to Rule 702 reinforced the idea that the reliability analysis must be flexible. Fed. R. Evid. 702 cmt. (2000 Amendments); *see also Ferguson v. GB Tools & Supplies, Inc.*, No. 1:08-CV-079-C, 2009 WL 10703177, at *4 (N.D. Tex. July 31, 2009) (Cummings, S.J.). Not every *Daubert* factor will be applicable every time, and a court may consider other factors when warranted by the facts and circumstances. *Kumho Tire Co.*, 526 U.S. at 151. "[W]hether *Daubert's* suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). The decision to allow or exclude expert testimony under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.,* 224 F.3d 402, 405 (5th Cir. 2000).

Vance's opinions do not meet the requirements of Federal Rule of Evidence 702 because they are not within his field of expertise, reliable, or relevant to this litigation. Under the standards set forth in *Daubert* and in its role as "gatekeeper," the Court should exclude some or all of Mr. Vance's opinions as discussed below.

### A. Vance is not qualified to opine on County policies and practices and jail conditions.

Experts in federal court are only permitted to offer opinions on the subject matter or fields in which they actually have expertise. "A district court should refuse to allow an expert witness to

5

testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). An expert who relies on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 cmt. (2000 Amendments). "[T]aking the experts' word for it" is not appropriate. *Id*. (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.")). The expert's area of expertise and training must show specialization in the matters upon which he opines, not just experience tangentially related to the matters at hand. *E.g., United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247-PRM, 2010 WL 11451504, at *3-4 (W.D. Tex. Mar. 26, 2010) (citing *Hathaway v. Bazany*, 507 F.3d 312, 318 n.2 (5th Cir. 2007), and *Seaman v. Seacor Marine L.L.C.*, 326 Fed. App'x 721 (5th Cir. 2009) (per curiam)); *Utils. Optimization Grp., L.L.C. v. Temple-Inland, Inc.*, No. 1:08-CV-68-TH, 2010 WL 11530726, at *2 (E.D. Tex. Jan. 13, 2010) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998)). Likewise, the expert's relevant experience cannot be remote in time. *See Gonzalez*, 2010 WL 11451504, at *5. There must be an "obvious link" between the witness's "training and experience and any conclusions drawn." *See Utils. Optimization Grp.*, 2010 WL 11530726, at *2.

Vance is not qualified as an expert to opine on county policies and practices or jail conditions. The only experience listed in his CV involving any work in a jail was his position as "Jailer—Jail Division" from 1990 through 1992. (P-Appx 18) He does not elaborate on what he did in this position or whether this position gave him any relevant knowledge of county policies and practices or jail conditions. He also states that he "worked for five years with the Walker

6

County Sheriff's Office in Huntsville, Texas, as a commissioned correctional officer, jail shift supervisor, and commissioned patrol deputy." (*Id*. at 4) However, from 1992 through 1995, Vance worked as a "Deputy Sheriff—Patrol Division." (*Id*. at 17) He does not describe how this position relates to county policies and practices or jail conditions. Likewise, he does not tie this position to any knowledge of or experience with these topics. Moreover, this experience is at least 30 years old. Thus, to the extent his experience is relevant to these topics, it is "dated and limited." *See Gonzalez*, 2010 WL 11451504, at *5; *see also Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. 1993) ("As the district court pointed out, [the expert] was last qualified as an accident reconstructionist in 1965. Since that time, [the expert] had not taken any refresher courses.").

Vance likewise has not demonstrated a link between his training and experience and the conclusions drawn regarding county policies and practices and jail conditions. In his CV, he describes his "Job Duties and Responsibilities" as follows:

> conducts criminal and special investigations, particularly those of a felonious nature, visits crime scenes, collects physical evidence, takes statements from witnesses, interrogates suspects, secures warrants, and apprehends offenders. Assists local law enforcement in suppressing agricultural-related crimes. Provides testimony before grand juries and trial courts. Gathers and disseminates criminal intelligence on all facets of organized crime. Provides training in the field of crime scene investigation and for commissioned law enforcement personnel throughout Texas and Oklahoma. Provides training in the field of Hostage/Crisis Negotiation to commissioned and non-commissioned law enforcement and military personnel in the United States and internationally.

(P-Appx 17)

The "Qualifications and Background" section of Vance's report also fails to show requisite expertise regarding county policies and practices and jail conditions. Other than the discussion of his role at the Walker County Sheriff's Office in the early nineties, discussed above, Vance describes law enforcement activities regarding criminal and special investigations and highway

patrol and Texas Ranger duties. (*Id*. at 4-5) Nothing in this list of purported qualifications includes any reference to knowledge of or experience with the topics on which Vance opines.

None of this experience, which relates to investigations and law enforcement, touches on county policies and practices or jail conditions. Even though Vance lists a "Jailer License Certification," (*id*. at 18), his Texas Commission on Law Enforcement Personal Status Report (PSR) reflects that he was granted a "Jailer License" on March 16, 1990, but that license became inactive on September 1, 2013 (*id*. at 31). Therefore, he has not had an active jailer license since at least that date. His "Basic Jailer" certification was issued on March 1, 1991, (*id*.), which is also very remote in time. Regardless, Vance does not describe how such a certification qualifies him to opine on county policies and practices or jail conditions.

None of Vance's academic positions indicate they are related to the topics on which he opines in this case. (*Id*. at 18) The same goes for his professional honors and positions. (*Id*. at 19) Similarly, his list of courses instructed, although impressive, relates to crash reconstruction, crisis negotiation, crime scene and forensic investigations, active shooter training, use of force, and related law enforcement activities. (*Id*. at 19-21) His professional presentations were about murder case studies and hostage negotiations. (*Id*. at 21-22) The trainings he has given and received similarly do not touch on county practices and policies or jail conditions. (*Id*. at 22-26) The only course he took related to jails was the "Basic Jail Course" he took in 1991. (*Id*. at 44) The only course he took related to suicide was the "Prevention and Response to Suicide Bombings" course he took in 2013, which ostensibly does not relate to county policies or jail conditions. (*Id*. at 36) His case investigations and publications likewise do not cover these topics. (*Id*. at 27-29)

In presenting Vance as an expert on conditions of confinement, the County is simply trying to fit a square peg into a round hole. Vance's experience in law enforcement, although extensive

8

regarding other matters, does not show any specialized expertise qualifying him to testify as an expert on the matters at issue in this case, involving county practices and policies and jail conditions. Accordingly, Plaintiffs ask the Court to exclude Vance's testimony on this basis. However, even if the Court concludes that Vance is qualified to opine on these matters, many of his opinions are not reliable or relevant to the issues at hand and should be excluded on that basis.

### B.  Vance's opinions are not reliable or relevant.

Vance repeatedly offers opinions based on insufficient facts or data, makes baseless legal conclusions about which he cannot testify, and attempts to tell the jury what to conclude as to elements of claims and defenses. He also presents countless unfounded conclusions in his report, the majority of which identify no principles or methods (let alone *reliable* principles or methods). "[T]rial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disasters at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986); *see also Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 551 (N.D. Tex. 2018). Expert testimony thus must be limited to that which "will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Air Crash Disasters*, 795 F.2d at 1233 (quoting Fed. R. Evid. 702). Neither *Daubert* nor the Federal Rules of Evidence "requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co.*, 522 U.S. at 146. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id*.

In addition to being reliable under Rule 702, the testimony must also be relevant. Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would have been without the evidence[.]" Fed. R. Evid. 401. Irrelevant evidence is not admissible.

Fed. R. Evid. 402. Even if evidence is relevant, a court may exclude it "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In general, while expert testimony that "embraces an ultimate issue," is not objectionable on that basis, experts may not instruct the jury on the law governing the claims in a case. Fed. R. Evid. 704; *see Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). "Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court." *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467-68 (E.D. Tex. 2013). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."). "[T]here is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673. A jury is also "very susceptible to adopting the expert's conclusion rather than making its own decision." *Id.* Testimony by an expert witness that is a legal opinion is, therefore, inadmissible. *Id.*; *see also Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 731 (N.D. Tex. 2017).

### 1.  Not Based on Sufficient Facts or Data

As an initial matter, Vance cannot opine on the subjective knowledge, beliefs, or mental impression of other people. *See, e.g., United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, No. 3:19-CV-02486-N, 2024 WL 4508961, at *18 (N.D. Tex. Oct. 15, 2024) ("[D]irect statements of state of mind are not proper expert testimony."); *United States ex rel. Ruscher v.*

10

*Omnicare, Inc.*, No. 4:08-CV-3396, 2015 WL 5178074, at *11 (S.D. Tex. Sept. 3, 2015) (holding expert would "not be permitted to testify about [party's] intent, motive, or state of mind, as that is typically held to be within the province of the jury"); *cf. United States v. Ibarra*, 493 F.3d 526, 532 (5th Cir. 2007) ("Federal Rule of Evidence 704(b) prohibits an expert from stating an opinion as to whether the defendant had the requisite state of mind for the crime charged."). Jurors are just as qualified to determine for themselves what individual witnesses recognized, knew, and believed based on all available evidence as Vance could ever be. Vance is not a mind reader and should not be permitted to testify as to the subjective rationale and thought processes of other people.

In addition to invading the province of the jury, the following opinions are speculative and would not help the trier of fact determine any issue and, thus, should be excluded:

- Derrek engaged in "negative behavior, which turned violent because he was not provided regular jail clothing," and Derrek "beat on the walls in a fit of rage because he was not getting regular jail clothing like he wanted." (P-Appx 9) These speculative, inflammatory, and argumentative opinions, based on Vance's review of the video feed in Derrek's cell, can just as easily be assessed by jurors, who can make their own decisions regarding the meaning of Derrek's behavior.

- Jailer Laws "attempted to de-escalate [Derrek] by speaking to him calmly through the bars." (*Id.*) Again, this opinion, based on an audio-free video recording, invades the province of the jury to decide the import of Derrek's and Jailer Laws' behavior.

- "[W]hen jail staff placed [Derrek] in cell #3, it is my opinion that they believed they had created a safe environment for [Derrek]." (*Id.* at 12) Vance's ipse dixit

11

about the subjective beliefs of County jailers is entirely speculative, inappropriate, and inadmissible. It also invades the province of the jury to tell them how to interpret the actions of County jailers with regard to an issue that jurors are just as qualified to determine as any expert.

- "[Derrek] was never in danger of violence or abused within the jail facility" and "[Derrek] was provided with access to food, water, and hygiene supplies, and would have eventually had an opportunity to exercise had he remained in custody." (*Id.* at 13) These statements are conclusory and speculative and invade the province of the jury.

- "Even though [Derrek] was moved to cell #3 after he manifested his desire to commit suicide, he could have continued his relationship with the inmate who was in cell #2." (*Id.* at 13) This statement lacks foundation, is speculative, and is irrelevant.

- The following statements lack foundation and are entirely speculative, particularly the statement regarding "[t]he majority of jails":

    > Most cells are small and contain fixed objects such as beds, sinks, and toilets. This limits the movable space even more. The majority of jails in Texas will have a policy restricting a jailer from making entry into a cell alone. This is a safety issue and is in place to protect a jailer from being overtaken, which could lead to a jail takeover, escape, or even the death of other inmates or employees.

(*Id.* at 13-14) Vance does not articulate the basis for his knowledge of these statements. He just states in a conclusory fashion, without foundation, what policies "[t]he majority of Texas jails" supposedly have. For example, he does not indicate that he designed, inspected, or audited jails before or otherwise would have knowledge of how most cells are designed or what policies most

12

jails have. He points to no basis for his opinions regarding these issues. As discussed above, Vance does not provide an adequate basis for his qualifications to opine on jail policies or conditions. Vance cannot "go beyond the scope of his expertise in giving his opinion." *See Goodman*, 571 F.3d at 399.

- "[G]iven [Derrek's] aggravated state and his display of violence, Jailer Laws would have been putting his life on the line to make entry into the cell alone to rescue [Derrek]." (P-Appx 14) The jury is just as qualified as Vance to assess the risk to Laws, if any, in entering the cell. For example, the jury alone should decide whether there was any danger to Laws especially after Derrek became unconscious. This type of "expert" testimony is merely improper jury argument that is conclusory, speculative, and inflammatory.

- "Coleman County Jail staff demonstrated the desire to provide [Derrek] with any medical care he needed." (*Id.*) Again, it is improper and speculative for any expert to speak to what jailers in this case thought or desired. The jury is to weigh the evidence and draw reasonable inferences from it.

### 2. Improper Conclusions

The majority of Vance's opinions are impermissible legal conclusions or direct commentaries on the weight or caliber of the evidence that will be presented to the jury and inappropriately tell the jury how to view the issues it must decide. Many of these opinions even appear to simply copy the language of applicable law. For example, Vance cannot tell the jury that the County complied with the Fourteenth Amendment, that the alleged conditions of confinement did not amount to punishment, or that the conditions of confinement are related to legitimate

governmental objectives. (*See id*. at 15) It is for the trier of fact to decide ultimate issues in this case, not for Vance to use his perceived authority as an "expert" witness to impermissibly advocate to the jury. *See Askanase*, 130 F.3d at 673. A jury is to decide the facts in this case to determine whether the County violated Derrek's constitutional rights. And the role of "deciding the law for the benefit of the jury" belongs solely to the Court. *See id*.; *see also Goodman*, 571 F.3d at 399. Vance's opinions do not aid the jury in understanding the evidence or determining fact issues. Instead, his opinions explicitly tell the jury how to decide these issues. And the Court should "be wary" of allowing Vance to "become nothing more than an advocate of policy before the jury." *In re Air Crash Disasters*, 795 F.2d at 1233. Vance's opinions offer no "more than the lawyers can offer in argument." *Id.*

Vance cannot make legal conclusions, which the Court is fully equipped to provide in the jury charge if it deems necessary to instruct the jury regarding applicable law. The following legal conclusions should be excluded:

- "There is no requirement from the Texas Commission on Jail Standards that every jail must have two (2) jailers on duty at all times. Coleman County Jail met the minimum requirement standards for jail staffing at the time of [Derrek's] suicide." (P-Appx 12) Not only is this a legal conclusion reciting and applying jail regulatory standards, but it is also not helpful to the jury and is in fact confusing because it does not address the *constitutional* standards that the jury will have to address as instructed in the jury charge. Similarly, the following paragraph merely recites a regulatory standard that does not address constitutional standards:

  The Texas Commission on Jail Standards requires a minimum jailer-to-inmate ratio of one (1) jailer per forty-eight (48) inmates or

increment thereof on each floor of a facility housing ten or more inmates. This ratio applies to direct inmate supervision. The Commission also mandates that there must be one jailer on each floor where ten (10) or more inmates are housed.

(*Id*.) The Court is fully equipped to provide any necessary instructions reciting the applicable regulations in this case.

- Vance defines conditions of confinement for the jury as:

    the circumstances under which a person is incarcerated, including the physical environment, treatment, and overall living situation within a person or jail. These conditions are subject to legal scrutiny, particularly regarding their compliance with the Fourth Amendment's Due Process clause, which the Supreme Court has said prohibits a pre-trial detainee being subject to punishment.

(*Id*. at 12-13) This is just a recitation of purported legal standards, which are to be determined by the Court, and as discussed, the Court will instruct the jury on any applicable legal standards.

- Similarly, the entire section entitled "Aspects of Conditions of Confinement" should be excluded. (*Id*. at 13) Not only does it include an arbitrary and incomplete list of purported conditions that lacks foundation and includes speculatory comments addressed above, but it also includes legal conclusions that the County complied with Texas Commission on Jail Standards (TCJS) requirements. As noted, Vance's opinion on whether the County complied with TCJS standards is not helpful, would potentially confuse the jury, and does not address the constitutional standards that the jury will have to address as instructed in the jury charge.

- "[T]he Coleman County Sheriff's Office followed policy in the booking process of [Derrek] Monroe." (*Id*. at 14) This is a legal conclusion and also irrelevant because it does not address the jail policies and conditions of confinement at

15

issue in this case. It will only serve to confuse the jury to point out ways that the County purportedly followed its own policies that are not being challenged in this case. Moreover, the jury can make its own assessment of whether relevant policies were followed in this case.

- The block quotes from *Bell v. Wolfish*, 441 U.S. 520 (1979), should also be excluded because they purport to instruct the jury on the law, which is solely the Court's responsibility. (P-Appx 15)

- The following paragraphs should also be excluded because they call for a legal conclusion, are speculative and lack foundation, invade the province of the jury and the Court's responsibility to instruct the jury on the law, and do not assist the jury in applying the law to the facts:

    It is my opinion that the Coleman County Jail provided a condition of confinement per the Fourteenth Amendment, and none of the conditions imposed amounted to punishment. The conditions of confinement were related to legitimate governmental objectives of the Coleman County Jail including but not limited to complying with federal and state laws and regulations, providing for the safety and security of the jail, jail staff, and other personnel, other detainees at the jail, and preventing detainees from self-harm or harming other detainees. [Derrek] was provided with adequate care, and the jail complied with the Texas Commission on Jail Standards regarding staffing, which is the ruling authority for all correctional facilities. None of the actions by the Coleman County Jail staff were considered arbitrary or purposeless. . . .

    [I]t is my professional opinion that the Coleman County Sheriff's Office followed their policies and procedures, state law, constitutional law, and Texas Commission of [sic] Jail Standards policies and procedures in booking [Derrek] in, identifying his mental illness, followed procedures to prevent [Derrek] from committing suicide, supporting him with positive communication, treated him with respect, and providing him with medical assistance. At no time could the actions of the Coleman County Jail staff or the conditions in which [Derrek] was kept be considered punishment.

(*Id*.); *see Goodman*, 571 F.3d at 399.

16

A jury will weigh the evidence before it, including testimony, and will decide what policies, practices, or customs existed and whether those policies, practices, or customs were the moving force behind any violation of Derrek's constitutional rights. Vance is simply attempting to substitute the jury's judgment for his own. Again, it is for the jury to decide how to weigh evidence or whether there is evidence in support of the elements of a claim or defense. Each of these opinions tells the jury how to decide an issue before it and should be excluded:

- The following paragraphs improperly interpret the meaning of a TCJS "Technical Assistance Memorandum" as "a suggestion and not a directive," which is a legal determination, and direct the jury to weigh disputed evidence in favor of the defense. It is also speculative for Vance to opine regarding what the witnesses would have done in other purported circumstances:

  > Sheriff Cogdill stated in his deposition that he was elected after the memorandum came out and was unaware of the recommendation. Jail Administrator Brixey indicated in her deposition that she was employed as the Coleman County Jail Administrator when the memorandum came out, but did not remember seeing it, and a copy of the memorandum was not located in the jail files. . . .

  > Although the 2015 Texas Commission on Jail Standards memorandum on phone cord length was a suggestion and not a directive, it appears the previous Sheriff did not see the memorandum. Sheriff Cogdill said he was never aware of the memorandum. Jail Administrator Brixey was in a position to see the memorandum in 2015, but stated she did not remember seeing it, and the memorandum was not filed in the jail paperwork. I believe that had this memorandum been a directive and not a suggestion, the cell phone cords would have been changed out in 2015.

  (P-Appx 11, 14-15) Whether jail officials saw or knew about the memorandum is a disputed issue to be weighed by the jury, and there is no basis for Vance to opine that jail officials would have acted differently if the memorandum were a directive, which is pure speculation.

17

- The following paragraphs improperly attempt to weigh purported evidence regarding the County budget. Nothing in these purported opinions would assist the jury in understanding the facts at issue. Vance also has not established that he is qualified to opine on the County budget. Moreover, his opinion does not indicate the source of this information. The jury is just as qualified to weigh this purported evidence and make its own determinations:

> The Coleman County Sheriff's Office is provided with an annual budget by the Coleman County Commissioners. Within the total annual budget is the salary for jailers. According to Sheriff Cogdill, the budget at the time provided for a total of six (6) jailers who work twenty-four (24) hours a day, seven (7) days a week, three hundred and sixty-five (365) days a year. This budget will not allow the Sheriff to have two (2) jailers on duty at all times. Sheriff Cogdill stated that since 2008, there has only been one (1) jailer on duty from 11:00 PM on Friday to 7:00 AM on Monday. Sheriff Cogdill stated there could be two (2) jailers on days or evenings during the weekday, depending on how the schedule falls.

> Because of the staffing allowed by the budget, the Coleman County Sheriff's Office maintained nine (9) or fewer inmates housed at the jail at any given time. If the number of inmates exceeded nine (9), agreements were in place to house the excess inmates in the adjacent counties.

> With the limited number of inmates, the one (1) jailer per ten (10) inmate mandate by the Texas Commission on Jail Standards, and the need to remain within budget, the Coleman County Sheriff's Office required at least one (1) jailer to be on shift during the days, one (1) during the evenings, and one (1) jailer at night during weekdays. On the weekends, there was only one (1) jailer on duty per shift.

(*Id*. at 12)

In addition to the objectionable matters discussed above, the following purported opinions should also be excluded because Vance has not demonstrated his qualifications to opine on such matters, and the opinions are irrelevant or speculative:

18

- "Jailers are taught to walk behind inmates when they are escorting them so that they can perceive and react to potential threats." (*Id*. at 14) As discussed above, Vance has not demonstrated that he has the adequate knowledge or experience to opine on what jailers are taught regarding how to handle detainees in a jail setting.

- The following paragraph regarding what might have happened had Derrek not been arrested is not only irrelevant, but it is speculation.

  > I believe that had [Derrek] not been arrested for being in possession of a controlled substance, this event would not have occurred. But, because he did the above-mentioned and because [he] was suffering from mental illness, I believe that had [he] not attempted suicide in jail, even though the jail staff took precautions to keep [Derrek] from trying to end his own life, this event would not have occurred.

  (*Id*. at 15) The statement that if Derrek had not attempted suicide, the event would not have occurred is also confusing and would not be helpful to the jury. No one disputes that Derrek tried to commit suicide and succeeded. The problem is that County employees, in complying with County policy, did not render aid in time to save Derrek. Jailer Laws stood by watching while Derrek was dying and essentially did nothing until it was much too late to help him. To the degree Vance is arguing that Plaintiffs cannot establish causation, which is not clear, the opinion also improperly calls for a legal conclusion. Vance also points to no methodology to support the conclusion that there is a causal link between Derrek's arrest and his suicide. Such an opinion also invades the province of the jury to decide causation.

## III.    CONCLUSION

The proffered opinions of Vance, as discussed above, do not meet the requirements of Federal Rule of Evidence 702. Not only is Vance unqualified to opine on jail policies and conditions, but his testimony is also neither reliable nor relevant. For the reasons discussed herein, the Court should exclude Vance's opinions from use as testimony or in any motions in this case, including summary judgment motions.

Respectfully submitted:

Law Offices of Dean Malone, P.C.


/s/ Jennifer Kingaard
Jennifer Kingaard


Attorney-in-charge:

T. Dean Malone
Texas State Bar No. 24003265
dean@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street Suite 730
Dallas, Texas 75202
Telephone:    (214) 670-9989
Telefax:         (214) 670-9904

Of Counsel:

Jennifer Kingaard
Texas State Bar No. 24048593
jennifer.kingaard@deanmalone.com
Jessica Bebawi
Texas State Bar No. 24108867
jessica.bebawi@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street Suite 730
Dallas, Texas 75202
Telephone:       (214) 670-9989
Telefax:            (214) 670-9904

Attorneys for Plaintiffs

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on July 25, 2025, I conferred with counsel for the County, Jon Mark Hogg, and he informed me that this motion is opposed.

<u>/s/ Jennifer Kingaard</u>
Jennifer Kingaard

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, which provided notice to all attorneys of record.

<u>/s/ Jennifer Kingaard</u>
Jennifer Kingaard